**SIERRA CLUB, Plaintiff,**

**v.**

**Stephen L. JOHNSON, Acting Administrator, United States Environmental Protection Agency, Defendant.**

**No. CIV.A.04–2163(JR).**

United States District Court, District of Columbia.

April 6, 2005.

David S. Baron, Earthjustice, Washington, DC, for Plaintiff.

Eileen T. McDonough, U.S. DOJ, Washington, DC, for Defendant.

## *MEMORANDUM*

ROBERTSON, District Judge.

The Sierra Club seeks injunctive relief to compel the Administrator of the Envi-

ronmental Protection Agency to fulfill his obligation, assigned to him by the Clean Air Act, to take final approval/disapproval action on state implementation plans (SIPs) submitted by Washington, D.C., Maryland, and Virginia ("the states"). At oral argument of the Sierra Club's motion on February 14, 2005, I stated that EPA would indeed be affirmatively enjoined to take the required action, and to do it no later than the date by which EPA has promised to take action, May 3, 2005. This memorandum states the reasons for that mandatory injunction.

### Clean Air Act (CAA)

EPA has promulgated national ambient air quality standards (NAAQS) specifying permissible concentrations of certain pollutants, one of which is ozone. Geographic areas are designated "attainment" or "nonattainment" areas depending on whether they meet the NAAQS. Nonattainment areas for ozone are subclassified as marginal, moderate, serious, severe, or extreme. The Clean Air Act set deadlines by which designated areas must achieve the ozone NAAQS. In 1991, EPA designated the Washington D.C. area a "serious" ozone nonattainment area, with a designated attainment date of November 15, 1999. 42 U.S.C. § 7511(a)(1). If the EPA finds a nonattainment area has not met its attainment deadline, the EPA must reclassify, or "bump up", the area.

The Clean Air Act required submission of state implementation plans (SIPs) showing how states would meet, maintain, and enforce the NAAQS for ozone. *Id.* at § 7410(a)(2). Within six months after the submission of an SIP, EPA was required to determine whether the plan was complete. If six months passed with no EPA action on a SIP, the plan was deemed complete by operation of law. *Id.* at § 7410(k)(1)(B). Once an SIP was deemed complete, the EPA had 12 months to approve or disapprove it, either in whole or in part. *Id.* at § 7410(k)(2).

### History of the current dispute

Washington, D.C., Maryland, and Virginia submitted their SIPs to the EPA in 1997 and 1998. (These plans are collectively referred to as the pre–2001 submissions). In their pre–2001 submissions, consisting of rate of progress plans (ROP)[1] and attainment plans, the states asked the EPA to push back the attainment deadline for ozone emissions by six years, to November 15, 2005. The EPA promulgated a rule on January 3, 2001 approving the submissions, including the requested extension. In *Sierra Club v. EPA*, 294 F.3d 155 (D.C.Cir.2002) (*Sierra Club I*), upon a petition for review, the Court of Appeals remanded that rule, finding that EPA lacked the authority to extend state attainment deadlines or to approve SIPs that failed to meet Clean Air Act criteria.[2] *Id.* at 158.

---

1. Rate of progress plans (ROPs) must demonstrate "the plan, as revised, will result in VOC emissions reductions from the baseline emissions described in subsection (b)(1)(B) of this section equal to the following amount averaged over each consecutive 3–year period beginning 6 years after November 15, 1990, until the attainment date: (I) at least 3 percent of baseline emissions each year; or (ii) an amount less than 3 percent of such baseline emissions each year, if the State demonstrates to the satisfaction of the Administrator that the plan reflecting such lesser amount includes all measures that can feasibly be implemented in the area, in light of technological achievability." 42 U.S.C. § 7511a(c)(2)(B)

2. SIPs for severe and serious nonattainment areas must include plans to implement all "reasonably available control measures [RACM] as expeditiously as possible"; must contain rate of progress (ROP) plans to reduce ozone forming emissions by 3% annually, as averaged over every three-year period

When the EPA did not act timely upon the remand, the plaintiff filed a citizen suit in this court (*Sierra Club II* ).[3] On December 18, 2002, in Civil Action No. 02–2235, I ordered EPA to publish a final determination as to whether the states had met their deadlines for NAAQS ozone attainment in the D.C. area and to reclassify the area appropriately if it found nonattainment. On January 24, 2003 EPA issued its determination that the states had not complied with the November 15, 1999 attainment deadline for serious nonattainment areas and "bumped up" the D.C. area to "severe." *See* 42 U.S.C. § 7511(b)(2). The attainment deadline for severe nonattainment areas is November 15, 2005. *Id.* at 7511(a)(1).

The states then filed revised SIPs, and, on April 17, 2003, the EPA conditionally approved them. The Sierra Club again petitioned the D.C. Circuit for review. In *Sierra Club v. EPA*, 356 F.3d 296 (D.C.Cir.2004) (*Sierra Club III* ), the court "agree[d] with the Sierra Club's principal contention that EPA was not authorized to grant conditional approval to plans that did nothing more than promise to do tomorrow what the Act requires today." *Id.* at 298.[4] The court held that the states' plans still lacked the statutory elements that the court had found lacking in *Sierra Club I* and noted the EPA's concession that the plans did not contain measures to account for the "bump up" of the states ozone nonattainment classification from serious to severe.

The Sierra Club then returned to this court, moving for an order enforcing the December 18, 2002 order in *Sierra Club II* that had directed EPA to act on the states' pre–2001 submissions. I denied that motion on August 25, 2004, noting that, although the "Court of Appeals' decision to which plaintiff refers invalidated the substance of one of those actions . . . EPA's act of publishing the notices satisfied the terms of the injunction."

*Analysis*

It has taken considerably longer to recite the background of this case than to answer the legal question it presents. That question is whether (as Sierra Club contends) EPA still has a duty enforceable in this Court to act on the SIPS submitted by the states before 2001 to address what were then serious nonattainment areas, or whether (as EPA contends) that duty was either satisfied by its 2003 rule conditionally approving the SIPS or "overtaken by events" when the states made further submissions in 2004 to address what by then had been bumped up to severe nonattainment issues.

The answer is that EPA's duty to act is still (or again) unfulfilled, because the Court of Appeals' order vacating EPA's

---

beginning in 1996 until the relevant attainment deadline; and must include specific contingency plans in case the area fails to meet ROP goals or the relevant attainment deadline. 42 U.S.C. § 7502(c)(1)-(2), (9). The Court of Appeals found that the ROP and attainment plans approved by the EPA lacked those statutory elements.

3. The CAA bifurcates jurisdiction over suits arising under the Act between circuit and district courts. This Court's jurisdiction is limited to suits to compel the Administrator to perform non-discretionary duties under the Act. 42 U.S.C. § 7604(a)(2).

4. The agency had conditionally approved the states' SIP revisions based on the states' promises "to cure those deficiencies and to comply with the additional requirements of the severe area classification by April 17, 2004." *Sierra Club,* 356 F.3d at 300. The court held the EPA's approval of these SIPs could not "be squared with the unambiguous statutory language" requiring the States to "commit to adopt *specific* enforceable measures." *Id.* at 302 (emphasis in original).

conditional approval of the pre–2001 SIPS in *Sierra Club II* operated to restore the status quo ante.[5] *See U.S. Tanker Owners Comm. v. Dole,* 809 F.2d 847, 854–55 (D.C.Cir.1987) (vacatur of agency rule returns conditions to status quo ante); *Sugar Cane Growers Co-op. of Fla. v. Veneman,* 289 F.3d 89, 97 (D.C.Cir.2002) (upon finding serious APA violation the court normally vacates and remands to the agency to start again). The status quo ante, indeed, was created by the Court of Appeals' vacatur of EPA's earlier action in *Sierra Club I* that left unfulfilled EPA's duty to take final approval/disapproval action on the states' plans and laid the predicate for the injunction in *Sierra Club II, see* Application Prelim. and Permanent Inj. in No. 02–2235 [docket # 3] at 15. The Administrator's non-discretionary duty under the Clean Air Act was to approve or disapprove the pre–2001 SIPS. The Administrator's two prior attempts to carry out that duty have been vacated by the Court of Appeals.

EPA's duty to act on the pre–2001 submissions has not been mooted or overtaken by the fact that the states made submissions in 2004 to address their bumped-up status as severe nonattainment areas. EPA suggests that the 2004 submissions re-started the clock for required agency action, but in fact the states' pre–2001 ROP submissions were supplemented, and not superseded, by the 2004 submissions. EPA also notes that the states formally withdrew their pre–2001 submissions (except for the ROPs) after the D.C. Circuit's *Sierra Club III* remand, and asserts that these withdrawals removed EPA's duty to act. EPA does not cite to the Clean Air Act for that proposition, however, nor does EPA offer any support for the notion that

"withdrawal" of pre–2001 SIPs could push back the deadlines established by Congress.

EPA continues to dispute the Sierra Club's submission that it has a duty to act on the pre–2001 submissions but concedes that it has a duty to act on something. It has stated in writing, and the statement was repeated by counsel at oral argument, that it "expects to complete final action" on the 2004 submissions, which would subsume or include action on the pre–2001 ROP submissions, "no later than May 3, 2005." Mem. in Opp'n 10. A mandatory injunction is an extraordinary remedy, especially when directed at the United States Government, but, considering EPA's unblemished record of nonperformance in this corner of the Clean Air Act, and noting the careful language of EPA's "expectation" that it will fulfill its duties on May 3, 2005—avoiding an enforceable promise—I find injunctive relief fully warranted. An appropriate order accompanies this memorandum.

---

5. The existence of an unfulfilled duty to perform a nondiscretionary act (that is, to approve or disapprove) also disposes of EPA's jurisdictional argument. It is true that the Clean Air Act's grant of jurisdiction to district courts is limited to suits to compel nondiscretionary acts, 42 U.S.C. § 7604(a)(2), but this is just such a suit.